Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6353 | **DATE** | 11/21/2001 |
| **CASE TITLE** | Albany Bank & Trust Company vs. Exxon Mobil Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing held.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's motion to dismiss is granted in part and denied in part. Plaintiff's motion to compel is denied as moot. Enter memorandum and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | NOV 23 2001 | |
| | Notified counsel by telephone. | date docketed | 20 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| SLB | courtroom deputy's initials | 01 NOV 21 PM 3:41 date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ALBANY BANK & TRUST COMPANY, not )
individually but solely as Trustee under trust no. )
11-4067, )
)
        Plaintiff, )
)
    v. )
)
EXXON MOBIL CORPORATION )
("ExxonMobil"), Lee Raymond, Chief )
Executive Officer and Chairman of the Board )
of ExxonMobil, Rene Dahan, Harry Longwell, )
Eugena A. Renna, Michael J. Boskin, William )
T. Esrey, Donald V. Fites, Jess Hay, Charles A. )
Heimbold, Jr., James R. Houghton, William R. )
Howell, Helen L. Kaplan, Reathya Clark King, )
Phillip E. Lippincott, J. Richard Munro, )
Marilyn Carlson Nelson, and Walter V. )
Shipley, individually and as members of the )
Board of Directors of ExxonMobil, )
)
        Defendants. )

No. 01 C 6353

Judge George W. Lindberg

**DOCKETED NOV 2 3 2001**

## MEMORANDUM OPINION AND ORDER

Defendants, ExxonMobil; Chief Executive Officer and Chairman of the Board of ExxonMobil, Lee Raymond; and members of the Board of Directors of ExxonMobil, Rene Dahan, Harry Longwell, Eugena A. Renna, Michael J. Boskin, William T. Esrey, Donald V. Fites, Jess Hay, Charles A. Heimbold, Jr., James R. Houghton, William R. Howell, Helen L. Kaplan, Reathya Clark King, Phillip E. Lippincott, J. Richard Munro, Marilyn Carlson Nelson, and Walter V. Shipley, have moved pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss plaintiff's complaint, which alleges violations of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, *et seq.*; Illinois statutes; regulations promulgated by the United States Environmental Protection Agency ("USEPA") and the Illinois



01 C 6353

Environmental Protection Agency ("IEPA"); and the common law. For the reasons stated below, defendant's motion to dismiss is granted in part and denied in part.

Plaintiff, Albany Bank & Trust Co., resides and does business in Cook County, Illinois. Plaintiff is the owner of real property located at 2050 Sibley Boulevard, Calumet City, Cook County, Illinois. ExxonMobil is a multibillion dollar international conglomerate that owns and operates a service station at 2047 Sibley Boulevard ("Service Station"), which is adjacent to plaintiff's property.

On July 8, 1999, ExxonMobil reported a release of petroleum from the Service Station to the IEPA, and in August, 1999, ExxonMobil reported the details of the release to the same agency. These details included levels of Benzene in excess of 22,000 parts per billion, several times the levels considered actionable by the IEPA, and other gasoline contaminants in excess of action levels adopted by the IEPA. ExxonMobil did not notify plaintiff of the release at this time.

In December 2000, ExxonMobil, through its agent, Handex Environmental Company, approached the tenant at plaintiff's property and requested access to investigate releases of petroleum from the Service Station that might have migrated onto the property. Plaintiff refused ExxonMobil access to the property unless it first agreed to remove any contamination discovered on the property and reimburse plaintiff for all remediation expenses. ExxonMobil refused to enter into the agreement, saying that it would only investigate.

On March 5, 2001, plaintiff sent demand letters pursuant to the notice provisions of RCRA, including letters to Lee Raymond and Mike Holland of ExxonMobil. Subsequently, plaintiff performed its own environmental investigation and discovered levels of MTBE and

2

01 C 6353

Benzene on its property that were above action levels established by the IEPA. On August 20, 2001, plaintiff filed suit against ExxonMobil and ExxonMobil's Chief Executive Officer and Board of Directors, both individually and as members of the Board of Directors. In its complaint, plaintiff sought declaratory and injunctive relief under RCRA for defendants' failure to investigate and remediate alleged contamination of plaintiff's property stemming from a release of petroleum from the Service Station (Counts I-II). Plaintiff also invoked this Court's supplemental jurisdiction under 28 U.S.C. § 1367 to make state law claims for relief (Counts II-V). In its response, plaintiff acknowledged that it only sought to hold the individual defendants personally responsible under the state law claims, not under RCRA.

On September 21, 2001, defendant filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and (12)(b)(6) (failure to state a claim upon which relief can be granted).

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which provides that district courts shall have original jurisdiction over all civil actions arising under the laws of the United States. The RCRA portions of counts I and II are brought against ExxonMobil exclusively and do not attempt to hold the members of ExxonMobil's board of directors personally liable. ExxonMobil seeks to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) states that a party to a lawsuit may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This Court will not dismiss the complaint for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of its claim which would entitle it to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In determining whether a complaint fails to state a

3

01 C 6353

claim, this Court accepts all well-pleaded factual allegations as true, as well as all inferences drawn from these allegations.

The RCRA portions of counts I and II invoke the citizen suit provision of RCRA, which provides in relevant part as follows:

> Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—
>
> (1)(A) against any person . . . who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or
>
> (B) against any person . . . including any past or present . . . owner or operator of a . . . storage . . . facility, who has contributed or who is contributing to the past or present . . . storage . . . of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment . . . .

42 U.S.C. § 6972(a)(1)(A) and (B). USEPA regulations interpreting RCRA impose duties on owners and operators of underground storage tanks ("USTs") to investigate, report, and remediate all free product releases. 40 C.F.R. § 280, *et seq.*; see also Aurora Nat'l Bank v. Tri Star Mktg., Inc., 990 F. Supp. 1020, 1025 (N.D. Ill. 1998).

Plaintiff argues that ExxonMobil violated USEPA regulations by failing to investigate and remediate contamination on plaintiff's property. ExxonMobil argues that it did not violate any of the regulations because it had no duty to remediate before it investigated, and it was prevented from investigating by plaintiff. It is undisputed that plaintiff refused to allow ExxonMobil access to its property unless it agreed to remediate any contamination and reimburse plaintiff for any expenses it incurred to remove the contamination.

The issues on which the ruling on the motion turns are whether under RCRA ExxonMobil had a duty to (a) investigate potential petroleum releases on plaintiff's property, (b)

4

01 C 6353

remediate any damage caused by such releases, and (c) reimburse plaintiff for its investigation and cleanup costs. This Court holds that ExxonMobil did not violate its duties under RCRA and that any cause of action plaintiff may have against ExxonMobil for remediation is premature until ExxonMobil has been given an opportunity to investigate any possible contamination on plaintiff's property.

Plaintiff is correct in pointing out that ExxonMobil has a duty under RCRA to investigate possible contamination on plaintiff's property. See 40 C.F.R. § 280.62(a)(6) and § 280.65 (a). It is undisputed, however, that ExxonMobil attempted to investigate plaintiff's property and was prevented from doing so by plaintiff. Plaintiff may not use its own refusal of ExxonMobil's investigation to charge ExxonMobil with failure to investigate under RCRA. See Aurora Nat'l Bank, 990 F. Supp. at 1026 (If plaintiffs have "impeded the enforcement of environmental laws for their own financial advantage, they have not acted consistent with the purpose of the statute and a finding of liability would not be warranted."). Further, this Court may not compel ExxonMobil to enter into the agreement since such a remedy would be beyond the scope of RCRA. See Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 19 (1979) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.") Thus, plaintiff's duty to investigate claim is dismissed.

Regulations interpreting RCRA provide that investigation should precede remediation. 40 C.F.R. 280, subpart F, outlines the steps owners and operators must take in response to releases of hazardous substances. Specifically, owners and operators must first investigate, then report, and finally remediate any contamination.

5

01 C 6353

Subpart F first directs owners and operators to investigate all hazardous substance releases: "Unless directed to do otherwise by the implementing agency, owners and operators must . . . [i]nvestigate to determine the possible presence of free product." 40 C.F.R. § 280.62(a)(6). If there is "evidence that ground-water wells have been affected by the release," the investigation also must include an examination of surrounding areas. 40 C.F.R. § 280.65 (a)(1).

Subpart F then directs owners and operators to "assemble information about the site and the nature of the release," including "[r]esults of the free product investigations required under § 280.62(a)(6)," 40 C.F.R. § 280.63(a)(4), and "submit the information . . . to the implementing agency." 40 C.F.R. § 280.63(b).

After receiving the information based on the investigations, the implementing agency may require owners and operators to submit a corrective action plan: "[A]fter reviewing the information submitted in compliance with § 280.61 through § 280.63, the implementing agency may require owners and operators to submit additional information or to develop and submit a corrective action plan for responding to contaminated soils and ground water." 40 C.F.R. § 280.66(a). Then the implementing agency may review the plan to ensure that it "adequately protect[s] human health, safety, and the environment." 40 C.F.R. § 280.66(b).

Finally, subpart F states that after approval of the plan by the implementing agency, "owners and operators must implement the plan, including modifications to the plan made by the implementing agency." 40 C.F.R. § 280.66(c).

Subpart F does permit owners and operators to begin cleanup of the contamination before approval of their plan, but it does not *require* them to do so. 40 C.F.R. § 280.66. Further, if

6

01 C 6353

owners and operators begin cleanup prior to approval of their plan, they are required to "(1) Notify the implementing agency of their intention to begin cleanup; (2) Comply with any conditions imposed by the implementing agency . . .; and (3) Incorporate these self-initiated cleanup measures into the corrective action plan that is submitted to the implementing agency for approval." 40 C.F.R. § 280.66(d). Thus, owners and operators are allowed to remediate contamination before directed to do so by the implementing agency, but they are not required to do so, and if they choose to remediate early, they must also implement any measures the implementing agency later finds to be necessary.

In summary, the regulations interpreting RCRA clearly delineate the steps owners and operators must take in dealing with hazardous substances. These steps do not require owners and operators to remediate any contamination before they investigate. To impose such a duty in this case would be contrary to the clear language of USEPA regulations. Thus, plaintiff's claim that ExxonMobil breached its duty to remediate under RCRA is premature because ExxonMobil has not yet had an opportunity to investigate.

ExxonMobil has no duty under RCRA to reimburse plaintiff for any of its past investigation or remediation costs. Case law establishes that citizen suits under RCRA do not permit recovery of money spent on past cleanup efforts. See Mehrig v. KFC W., Inc., 516 U.S. 479, 484 (1996) ("RCRA's citizen suit provision is not directed at providing compensation for past cleanup efforts."); Avondale Fed. Sav. Bank v. Amoco Oil Co., 170 F.3d 692, 694 (7th Cir. 1999) (holding that plaintiff could not recover for cleanup efforts commenced after citizen suit was filed). Plaintiff's claim for reimbursement of cleanup efforts is dismissed.

7

01 C 6353

As to the remaining portions of count II and counts III through V, all premised on state law, this Court declines to exercise supplemental jurisdiction because it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367 (c)(3).

**ORDERED:** Plaintiff's motion to dismiss is granted in part and denied in part. The portions of counts I and II that charge ExxonMobil with failure to investigate and reimburse under RCRA are dismissed with prejudice for failure to state a claim upon which relief can be granted. The portions of counts I and II that charge ExxonMobil with failure to remediate under RCRA are dismissed without prejudice because any claim plaintiff may have against ExxonMobil for remediation is premature. This Court declines to exercise supplemental jurisdiction over the remaining portions of count II and counts III through V, all dealing with state law, and dismisses these claims without prejudice.

ENTER:

*[signature]*
George W. Lindberg
Senior U.S. District Judge

DATED: NOV 21 2001

8